GEORGE SANDS, Respondent, v. WILLIAM BERKLEY et al., Defendants; THOMAS G. SYDNOR, Garnishee, Appellant.

**St. Louis Court of Appeals, February 14, 1900.**

1. **Fraud: GARNISHMENT: TRUSTEE'S SALE.** Mrs. Berkley, the owner of the equity of redemption, had a right to redeem her land from the lien of the trust deed, and in doing so, would not be subject to the charge of fraud.

2. ———: ———: **FINDINGS: CONCLUSIVE.** The question of a fraudulent purpose between Mrs. Berkley, Charles Berkley, and Sheriff Sydnor to hinder and delay the creditors of Mr. and Mrs Berkley, having been passed on by the trial court and a negative conclusion reached, will not be disturbed.

Appeal from the Lincoln Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

REVERSED AND REMANDED.

*Norton, Avery & Young* for appellant.

(1) It is unnecessary, we think, to make any extended brief or argument in this case, as it is one of a series of cases brought against garnishee, T. G. Sydnor, all of which are on the same footing. One of these cases, that of Jane Kemper v. T. G. Sydnor, garnishee, was passed on by this court at the March term, 1899, and this court reversed the action of the circuit court, giving its reasons therefor in the opinion to

which we refer. Kemper v. Berkley, 79 Mo. App. 578. Here, as there, the only effect of the whole transaction was to redeem by Mrs. Berkley, which she did and which is in that case we think correctly decided that she had a right to do. (2) We also call attention of the court to the fact that before the sale of the property and before the garnishment was served there was an agreement as shown by the evidence between Mrs. Berkley, Charles Berkley and Mr. Sydnor, the acting trustee, by which agreement Charles Berkley was permitted to buy in the land for Mrs. Berkley, his mother, and the trustee agreed to accept the receipt of Mrs. Berkley for the surplus. This was entirely without fraud on the part of any of the parties, and we think is authorized by the decision of this court in case of Jewell Pure Water Co. v. Harkness, 49 Mo. App. 357. (3) And again we think that the justice court had no jurisdiction, because in justices' courts only two interrogatories can be propounded and issues raised thereon. First. At the time of the service had you in your possession or under your control any property, money or effects? Second. At the time of the service did you owe defendant any money or do you owe him any now? The garnishee to both these interrogatories answered no. The plaintiff in denial says: "If you don't owe him you ought to" and "if you haven't got the money it is because of a fraudulent conspiracy between you and defendant to hinder and delay plaintiff in the collection of his debt." This certainly raised an issue that the justice had no jurisdiction to try, as the justice has no equity jurisdiction, and of course if the justice had no jurisdiction the appellate court by appeal acquired none. Iron Co. v. McDonald, 61 Mo. App. 559.

*Martin & Woolfolk* and *W. A. Dudley* for respondent.

(1) The refusal to give appellant's second instruction was not error in court, for reasons: Because the arrange-

ment, if any was made, by which the legal title to the property was to become vested in Charles Berkley, and the surplus receipted for by Mrs. Berkley was without consideration and was fraudulent and void as to existing creditors. Its effect was to place the legal title of all the available property of both William Berkley and Nancy J. Berkley out of the reach of creditors by ordinary process of law. Such transactions have always been illegal. Kuh v. Garvin, 125 Mo. 553; State ex rel. v. Benoist, 37 Mo. 500; Potter v. McDowell, 43 Mo. 93; Donovan v. Dunning, 69 Mo. 436; Scudder v. Payton, 65 Mo. App. 314; Snyder v. Free, 114 Mo. 360; State ex rel. v. McBride, 81 Mo. 349; s. c., 105 Mo. 265; Bank v. Buck, 123 Mo. 141; Dry Goods Co. v. McLaughlin, 78 Mo. 578; Simon v. Norton, 56 Mo. App. 338. (2) It was the duty of garnishee to collect the amount for which the land sold. Price v. Blankenship, 144 Mo. 203; McClurg v. Trust Co., 137 Mo. 106; Armstrong v. Tuttle, 34 Mo. 432. And to account for the proceeds by showing a legal disposition of the same. McGuire v. Wilkinson, 72 Mo. 199; Major v. Hill, 13 Mo. 247; Sherwood v. Sexton, 63 Mo. 78; Perry on Trusts [2 Ed.], secs. 602 and 927. And if he shows a disposition of the surplus by previous arrangement he must show that such arrangement is a legal and *bona fide* one. McClurg v. Wilkinson, *supra*; Drake on Attachments, secs. 512, 589, 601 and 677. (3) Hence, the doctrine announced in Iron Co. v. McDonald, 61 Mo. App. 559, has no application. Fraud may be pleaded and proven in garnishment proceedings before a justice of the peace as expressly decided in the folowing cases: Strauss v. Ayers, 34 Mo. 248; Humphrey v. Milling Co., 98 Mo. 542; Ross v. Ashton, 73 Mo. App. 254; Pittman v. Mining Co., 78 Mo. App. 438.

BIGGS, J.—This is one of a series of garnishments against Thomas G. Sydnor as the alleged debtor of William

and Nancy J. Berkley.   One of the cases was before us at the March term, 1899 (Kemper v. Berkley, 79 Mo. App. 578).   The opinion in that case contains a full statement of the facts and pleadings.   The present record presents the same pleadings, except the issues presented by the denial of the garnishee's answer and the reply thereto were tried whereas, in the Kemper case, the plaintiffs moved and had judgment on the pleadings.   We reversed this judgment on appeal, without remanding the case.   The judgment in the present case is also for plaintiffs and the garnishee has brought the case here for review.

The evidence tended to prove these facts:   William Berkley and Nancy J. Berkley, his wife, owned a farm as tenants in common.   They executed a mortgage on the land to secure their joint note for $8,500.   Afterwards there was a decree in partition dividing the property between the parties, to wit, one-third to Berkley, describing it, and the remainder to his wife, and there was a stipulation signed and filed that each party should pay one-half of the mortgage debt.   Default was made in the payment of the debt and the land was advertised for sale under the mortgage.   In the meantime Berkley and his wife had separated, but there had been no divorce.   In order to protect her interest at the coming sale and to force the portion of the farm allotted to Mr. Berkley to bear its just proportion of the mortgage debt, Mrs. Berkley made an agreement with her son Charles Berkley, to buy the farm for her in his name, and to accomplish this it was necessary, as neither Mrs. Berkley nor Charles had any money, to devise some plan by which Charles could borrow on the land sufficient money to pay the debt and costs of sale.   Thereupon it was agreed between Mrs. Berkley, Charles and Thomas G. Sydnor, the garnishee herein and who was the trustee in the deed of trust, that in the event the land was bid off by Charles, he (Sydnor) would accept

the receipt of Mrs. Berkley for the amount of the bid in excess of the mortgage debt, and that to enable Charles to borrow the money on the land, he (Sydnor) would deliver to him a trustee's deed, provided he was fully indemnified against the risk he assumed. With this understanding the land was offered for sale. The portion assigned to William Berkley was sold first, and it was bought by Charles. It did not bring enough to pay one-half of the debt. Then the portion belonging to Mrs. Berkley was sold, and it was also bought by Charles. The total amount of the sale exceeded the mortgage debt by about six thousand dollars. Thereupon Sydnor accepted a receipt from Mrs. Berkley for the overplus and he delivered to Charles a trustee's deed. Charles subsequently negotiated a loan on the land sufficient in amount to pay the mortgage debt and costs of sale. He paid this money to Sydnor, who in turn paid it to the beneficiary in the mortgage. After the sale and the settlement between Sydnor and Mrs. Berkley, but before the delivery of the trustee's deed to Charles, the garnishment herein was served.

It is insisted by counsel for plaintiff that it was the duty of Sydnor to collect the entire purchase money from Charles, and that the arrangement between the garnishee and Mrs. Berkley that she receipt to him for the overplus, was fraudulent and inoperative against the plaintiff, and that as to him the garnishee must be considered as indebted to Mrs. Berkley in the amount of said surplus. This was the view of the circuit judge, as is manifested by the instructions given and refused, and his finding thereunder, to wit:

The court gave the following instruction:

"1. If the court sitting as a jury find from the evidence that at the time of service of the garnishment the garnishee had no money, property or effects in his hands belonging to the defendant in the execution and was not in debt to the defendant in the execution, then the finding must be for the garnishee."

The court refused the following instruction asked by the garnishee:

"2. If the court sitting as a jury find from the evidence that prior to the sale under the deed of trust and prior to the garnishment that the defendant in the execution, Nancy J. Berkley, made an agreement with her son, Charles Berkley, by which the said Charles was to buy in the real estate in his name for her use and benefit, that said agreement was made in good faith and for the sole purpose of holding same in trust for the beneficiary, Nancy J. Berkley. That the surplus arising from the sale belonged to and was the property of the said Nancy and that said Nancy had agreed with said Charles that in case he, the said Charles, would buy in the property and hold the same for her, that she would receipt to the sheriff for such surplus. That these facts were communicated to the garnishee who was the sheriff and acting trustee, that said garnishee agreed with said Nancy and said Charles that such a course might be pursued and in accordance with such agreement said Charles did buy said real estate for the use and benefit of said Nancy all before the garnishment and that said Nancy J. Berkley in accordance with her agreement receipted for the surplus and that the garnishee actually received no more of the purchase price at the sale than was necessary to pay off and discharge said trusts and costs, then the verdict must be for the defendant."

The plaintiff's view of the law as above stated is contrary to our opinion in the Kemper case, *supra*. Speaking of the transaction we there said: "This transaction was a purchase by Mrs. Berkley of her own land at her own sale, and has the same legal and equitable bearing on her interest in the lands as if she had before sale paid off the deed of trust and received a deed of release from the trustee. She but redeemed her land from the lien of trust deed. As the owner of the equity of redemption she had a right to do this,

which right could not be defeated by the service of garnishment process on the trustee at the instance of her judgment creditors, as was attempted to be done in this case." If we had entertained the opinion that the alleged arrangement was fraudulent in law, the judgment in the Kemper case would unquestionably have been affirmed, for that question (and it was the only question) was squarely presented by that record.

The garnishee asked and the court refused to give an instruction that under the evidence the plaintiff could not recover. This instruction should have been given, unless there was substantial evidence that the arrangement between Mrs. Berkley, Charles Berkley and Sydnor was made with the fraudulent purpose of hindering and delaying the creditors of Mr. and Mrs. Berkley in the collection of their debts, or unless some of the surplus belonged to William Berkley. As to the good faith of the transaction we find no fact or circumstance in evidence tending to impeach it. The true ownership of the surplus depended somewhat upon oral testimony, and it was for the trier of the facts to decide whether any portion of it belonged to William Berkley. Therefore we conclude that this instruction was rightfully refused, but in our opinion the other instruction asked by the garnishee ought to have been given.

The judgment of the circuit court will be reversed and the cause remanded.   All concur.